UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

MILLENNIUM TRANSIT
SERVICES, LLC,

                                             Case No. 8-12848-s11

        Debtor.

## STIPULATED ORDER RESOLVING OBJECTIONS TO DISCLOSURE STATEMENT

THIS MATTER came before the Court on the proposed disclosure statement filed by the debtor Millennium Transit Services, LLC (the "Debtor") on October 28, 2010 docket #166 (the "Disclosure Statement"), and the objections thereto filed by Pioneer Bank, the State of New Mexico Investment Council, and the City of Roswell (collectively, "Pioneer") on November 23, 2010, docket #170; and by the Unsecured Creditors Committee (the "UCC"), on December 1, 2010, docket #171; and the Court, being duly advised in the premises and noting that the Debtor and the objecting parties have agreed to the entry of this order, FINDS:

1.      On August 29, 2008, Debtor filed its chapter 11 petition.

2.      On October 28, 2010, the Debtor filed its Plan of Reorganization, docket #165, and the Disclosure Statement.

3.      Pioneer's objection to the Disclosure Statement is resolved by  the Debtor amending Section 4.1 of the Plan to provide for the following treatment of Pioneer's secured claim:

> 4.1    Class 1 (Secured Claim of Pioneer Bank).  The Class 1 Claim shall be paid in accordance with the pre-petition loan documents, modified as set forth herein.  The first payment shall be made five days after entry of the order confirming the Plan, and subsequent payments shall be made monthly.  The Holder of the Class 1 Claim shall retain its liens on the

same property against which it had or are determined to have had a lien Pre-Petition. Except as otherwise provided in this Plan or other order of the Court, the terms and provisions set forth in the Pre-Petition Agreements between the Debtor and the Holder of the Class 1 Claim will remain in effect after the Effective Date. The missed post-petition principal amount of approximately $1.2 million is to be paid upon loan maturity in 2014.

The Disclosure Statement shall also be amended to reflect this treatment of Pioneer's claim.

4.     The UCC's Objection is resolved by adding the following language to Article IX(A) of the Disclosure Statement:

> MTS continues to attempt to obtain additional financing and is actively looking for new bus sale opportunities. However, to date, these efforts have not resulted in an opportunity that would support the restarting of bus production at the plant. MTS will continue investigating these opportunities with the goal that the plant will be restarted.

> Upon reaching the point where production would be restarting, MTS would expect to obtain proposals from former suppliers to provide parts to be used in the manufacturing of buses. Although MTS cannot guarantee any future orders, it would be MTS' current expectation that MTS would make reasonable efforts to resume buying from the significant majority of MTS' pre-petition suppliers, assuming these suppliers can provide a competitive product for the manufacturing process. MTS will attempt to keep suppliers informed of future developments with the plant and encourage suppliers to contact plant staff if they have future questions regarding the restarting of production.

The additional objections lodged by the UCC are resolved by amendments to the Disclosure Statement reflected in the marked draft attached as <u>Exhibit A</u> to this Order.

IT IS THEREFORE ORDERED that the Disclosure Statement, amended as set forth above, is approved. The Court will enter a separate order approving the Disclosure

Statement, setting deadlines for mailing the Plan and Disclosure Statement to creditors, and setting a confirmation hearing.

Hon. James S. Starzynski, United States Bankruptcy Judge

`Date entered on docket:   January 5, 2011`

Submitted and agreed:

THUMA & WALKER
A Professional Corporation
By: filed electronically
    David T. Thuma
    500 Marquette N.W., Suite 650
    Albuquerque, NM  87102
    Telephone:  (505) 766-9272
    Facsimile:  (505)-766-9287
Attorneys for Debtor in possession

Stipulated to by:

SANDERS, BRUIN, COLL & WORLEY, P.A.
By: agreed to telephone January 3, 2011
    Clarke C. Coll
    PO Box 550
    Roswell, NM  88202-0550
    Telephone:  (575) 622-5440
    Facsimile:  (575) 622-5853
Attorneys for Pioneer Bank, State of
New Mexico Investment Council,
and the City of Roswell

MOORE, BERKSON & GANDARILLA, P.C.
By: agreed to by telephone January 3, 2011
    George M. Moore
    P.O. Box 7459
    Albuquerque, NM  87194-7459
    Telephone:  (505) 242-1218
    Facsimile:   (505) 242-2836
Attorneys for Unsecured Creditors Committee

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

MILLENNIUM TRANSIT SERVICES, LLC,

Case No. 08-12848-s11

Debtor.

## DEBTOR'S DISCLOSURE STATEMENT

Millennium Transit Services, LLC ("Debtor" or "MTS") submits this Disclosure Statement (the "Disclosure Statement"), pursuant to §1125 of the Bankruptcy Code, in this chapter 11 case.

## I        INTRODUCTION

This Disclosure Statement is submitted to holders of Claims entitled to vote in connection with the proceedings seeking confirmation of the Plan. Unless otherwise defined in this Disclosure Statement, all capitalized terms shall have the meanings ascribed to them in the Plan. Creditors are urged to refer to the Plan for such definitions.

Pursuant to the Bankruptcy Code, Holders of Allowed Claims in all Classes are entitled to vote on the Plan. For a description of the Classes of Claims and their treatment under the Plan, see Section X below.

Holders of impaired Claims may vote either to accept or to reject the Plan. The Bankruptcy Code defines "acceptance," with respect to a class of impaired Claims, as acceptance by Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such class whose Holders cast ballots.

Attached as Exhibits to this Disclosure Statement are copies of the following:

| | |
|---|---|
| Exhibit A | Financial Statements for 2009 and 2008 |
| Exhibit B | Financial Statement for January –September, 2010 |
| Exhibit C | Liquidation analysis under a hypothetical Chapter 7 |
| Exhibit D | Summary of Creditor Claim Amounts, Listed by Class |
| Exhibit E | The Order and Notice of the Bankruptcy Court providing notice of the confirmation hearing, the deadlines and procedures for voting and for objecting to confirmation of the Plan (the "Order and Notice"); and |
| Exhibit F | The ballots for voting on the Plan (the "Ballots"). |

The provisions of the Plan are binding on all Creditors, therefore, please read the Plan carefully.

THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTOR FROM SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF. HOWEVER, THE DEBTOR DOES NOT WARRANT THAT ALL INFORMATION IS ACCURATE OR COMPLETE.

ALTHOUGH THE DEBTOR'S PROFESSIONAL ADVISORS HAVE ASSISTED IN THE PREPARATION OF THIS DISCLOSURE STATEMENT, THEY HAVE NOT INDEPENDENTLY VERIFIED THE INFORMATION SET FORTH HEREIN AND MAKE NO REPRESENTATION AS TO THE ACCURACY THEREOF.

THE DEBTOR URGES YOU TO READ THE PLAN, AS WELL AS THE DISCLOSURE STATEMENT, CAREFULLY. After carefully reviewing this Disclosure Statement and the Plan, including the respective Exhibits, each holder of an impaired Claim should decide whether to vote to accept or reject the Plan. Any such vote should be indicated on the appropriate enclosed Ballot and returned in the envelope provided. If you have a Claim in more than one Voting Class, you should utilize a separate Ballot for each Claim.

TO BE COUNTED, YOUR BALLOT MUST BE COMPLETELY FILLED IN, SIGNED, AND TRANSMITTED IN THE MANNER SPECIFIED IN THE BALLOT SO THAT IT IS RECEIVED BY THE VOTING DEADLINE SPECIFIED IN THE BALLOT. PLEASE FOLLOW CAREFULLY ALL INSTRUCTIONS CONTAINED IN THE BALLOT. ANY BALLOTS RECEIVED THAT ARE NOT COMPLETELY FILLED IN OR WHICH ARE NOT SIGNED OR THAT ARE NOT RECEIVED BY THE VOTING DEADLINE OR THAT DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR WHICH INDICATE BOTH AN ACCEPTANCE AND REJECTION OF THE PLAN WILL NOT BE COUNTED. See Voting Procedures in Section II below.

If you have any questions about the procedure for voting, or if you did not receive a Ballot, received a damaged Ballot, or have lost your Ballot, or if you would like any additional copies of this Disclosure Statement, please write to the Debtor's counsel, Thuma & Walker, P.C. (David T. Thuma), 500 Marquette, N.W., Suite 650, Albuquerque, New Mexico 87102, or call (505) 766-9272.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan (the "Confirmation Hearing") on the date and at the place specified in the Order and Notice accompanying this Disclosure Statement. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed on or before the date specified in the Order and Notice. The Confirmation Hearing may be continued or adjourned from time to time by the Bankruptcy Court without further notice except for the

announcement of the continuation date made at the Confirmation Hearing or at any subsequent continued Confirmation Hearing.

## II. VOTING PROCEDURES

The Debtor is providing copies of this Disclosure Statement and ballots to all known Holders of impaired Claims. Any creditor who has not received a ballot should contact or write to Thuma & Walker, P.C. (David T. Thuma), 500 Marquette, N.W., Suite 650, Albuquerque, New Mexico 87102, or call (505) 766-9272, dthuma@thumawalker.com.

Unless otherwise directed by the Bankruptcy Court, ballots that are not completely filled in or that are not signed or on which a vote to accept or reject the Plan has not been indicated or that indicate both acceptance and rejection of the Plan, will be disregarded.

If a ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing.

The Court has issued its Order requiring that all votes for the acceptance or rejection of the Plan proposed by the Debtor will be received by no later than _____*. Voting may be on the ballot which is provided along with this Disclosure Statement or in any other written manner. Mail or deliver your ballot so that it will be received by or before the deadline. A vote received after that time will not be counted. The ballot should be sent to:

> David T. Thuma
> Thuma & Walker, P.C.
> 500 Marquette, NW, Suite 650
> Albuquerque, New Mexico 87102
> (505) 766-9287 (fax)
> dthuma@thumawalker.com

Unless the ballot is timely received on or prior to the date specified in the Order and Notice, the ballot will not be counted in connection with confirmation of the Plan by the Bankruptcy Court. **Do not deliver your ballot to the Bankruptcy Court or to the Debtor**.

## III. HISTORY OF THE DEBTOR AND CURRENT AND HISTORICAL MANAGEMENT OF THE BUSINESS

MTS is a New Mexico limited liability company organized for the purpose of operating a bus manufacturing operation in Roswell, New Mexico. The bus manufacturing facility is located at 42 Earl Cummings Loop, Roswell, New Mexico 88203 in the Roswell Industrial Air Center.

-3-

In 2003, the principals of MTS acquired the acquired the existing assets of Nova Bus in an asset purchase. These assets manufactured a bus known as the RTS. The RTS bus is a heavy-duty transit bus sold primarily to transit authorities and municipalities. General Motors, Truck and Bus Division first developed the RTS in the mid 1970's. MTS planned to use the then existing RTS bus as a basis for future innovation for transit bus design and production.

Currently, MTS is managed by Millennium Transit LLC. Millennium Transit LLC is owned by James Ludvik.

## IV.  THE NATURE OF THE DEBTOR'S BUSINESS AND ASSETS, AND EVENTS LEADING TO THE CHAPTER 11 FILING

MTS's business is to build buses for sale to municipalities and other government entities. The filing of chapter 11 was generally caused by a lack of demand for MTS' buses and MTS' inability to obtain additional working loans. MTS currently is not building buses, due to a lack of demand for its products and issues with obtaining working capital or investment capital to fund a re-start of the manufacturing process. Since filing bankruptcy, MTS has as a debtor in possession, and has paid the post-petition bills necessary to preserve the Debtor's assets, in the expectation that the Debtor could find new bus contracts and resume operations. During the entire Chapter 11 period, the Debtor's ongoing losses have been funded on in interim basis by working capital loans by James Ludvik. Despite the efforts since the filing date, the Debtor has not been successful in obtaining a material amount of new manufacturing projects. Plan is being funded by James Ludvik.

## V.  MANAGEMENT AND INSIDER COMPENSATION

The Debtor is managed by Millennium Transit LLC. The current plant manager is Bill Beyerle. Millennium Transit LLC does not draw a salary or other compensation from the Debtor. Mr. Beyerle receives market-based compensation.

## VI.  THE FUTURE BUSINESS OPERATIONS, PROJECTIONS, PLAN FEASIBILITY

1.  <u>Future Business Operations</u>. MTS continues to investigate and market the manufacturing of new buses and to resume operations at some point in the future. Currently, MTS has new executed sale agreements for new buses. MTS continues to sell a small amount of replacement parts for existing RTS buses.

2.  <u>Feasibility</u>. The Plan is feasible because all unsecured creditor payments will be paid on the Initial Distribution Date, from new funds to be loaned to the Debtor from James Ludvik. Although the Debtor hopes that emerging from bankruptcy will allow the Debtor to sell new buses, there is currently no plan to immediately restart the manufacturing plant.

# VII    CLAIMS AGAINST THE ESTATE

Administrative Claims.

The Debtor estimates that there will not be any unpaid chapter 11 administrative expenses as of the date the Plan is confirmed, other than professional fees and United States Trustee fees not yet due.

The Debtor retained Thuma & Walker PC ("T&W") as its chapter 11 bankruptcy counsel. For services rendered from filing of the chapter 11 case on August 29, 2008. Through October 26, 2010, T&W had charged the Debtor a total of $51,228.62 for attorney fees, taxes, and costs. As of October 26, 2010, the unpaid balance owing by the Debtor to T&W was $7,650.53. The amount T&W charges the Debtor for services rendered after October 26, 2010 likely will depend primarily on the Plan confirmation process. The bulk of the work preparing this Disclosure Statement, and the Plan, will have been completed by October 26, 2010.

Secured, Priority and Unsecured Claims.

Attached as Exhibit D is a chart summarizing the Secured, Unsecured Priority, and Unsecured Non-Priority Claims against the Debtor. The summary is based on the Debtor's schedules filed in the Chapter 11 Case, the Debtor's perspective and anticipated treatment of these claims and the proofs of claim that were filed to date. The summary was prepared in October, 2010.

The Debtor estimates secured claims (including the unsecured portion of undersecured claims) in the amount of approximately $41,000,000, priority tax claims of approximately $0, and general unsecured claims of about $6,218,157.

# VIII    POST-PETITION DEVELOPMENTS IN THE CHAPTER 11 CASE

During the chapter 11 case, the Debtor has continued to operate its business.

The following is a summary other significant filings with the Clerk of the Bankruptcy Court, and Court orders, during the case:

| Date | Event |
|---|---|
| 08-29-08 | Debtor files chapter 11 petition. |
| 08-29-08 | Debtor files motion to employ Jacobvitz, Thuma & Walker PC (nka Thuma & Walker, P.C.) (Doc. No. 7) as his bankruptcy counsel, granted by an Order filed 01-15-09 (Doc. No. 77). |
| 09-11-08 | Debtor files motion to incur post-petition debt (Doc. No. 15), granted by |

order filed 10-16-08 (Doc. No. 47).

| | |
|---|---|
| 09-25-08 | Appointment of Unsecured Creditors' Committee ("UCC") (Doc. No. 31); Application to Employ Moore, Berkson & Gandarilla PC as counsel for UCC (Doc. No. 32) granted by Order filed 12/29/08 (Doc. No. 74). |
| 10-07-08 | Debtor files Adversary case 08-01119 to recovery money property (Doc. No. 41), Motion to Approve Compromise filed 10-15-08 (Doc. No. 45, order granted 10-27-08 including approval or Executory Contract (Doc. No. 53). |
| 10-23-08 | Joint motion for approval of Adequate Protection (Doc. No. 51), order entered 11-25-08 (Doc. No. 66). |
| 10-27-08 | Debtor files second motion to incur post-petition debt (Doc. No. 54), granted by order filed 11-25-08 (Doc No. 65). |
| 12-22-08 | Debtor files motion to authorize authority to incur post-petition secured indebtedness senior to certain existing liens (Doc. No. 71), order granted 01-27-09 (Doc. No. 85). |
| 02-05-09 | Debtor's 4th motion to incur debt for secured debt with superior lien (Doc. No. 91), order granted 03-02-09 (Doc. No. 97). |
| 03-16-09 | Debtor filed application to employ CBIZ Accounting of Colorado (Doc. No. 100), order granted 05-13-09 (Doc. No. 123). |
| 03-16-09 | Debtor filed application to employ Mayer Hoffman McCann as accountants (Doc. No. 102), order granted 05-12-09 (Doc. No. 121). |
| 03-27-09 | Debtor filed motion approving Premium Finance Agreement (AFCO Credit Corp) (Doc. No. 108), order entered 04-10-09 (Doc. No. 114) |
| 04-08-09 | Debtor filed 5th motion to incur post petition debt with seniority (Doc. No. 110, as amended 113), order entered 6-16-09 (Doc. No. 128). |
| 07-22-10 | Stipulated Order to file Plan and Disclosure Statement by 10-30-10 (Doc. No. 155). |

## IX    SUMMARY OF THE PLAN

THE SUMMARY OF THE PLAN SET FORTH BELOW IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN, THE TERMS OF WHICH ARE CONTROLLING.  HOLDERS OF IMPAIRED CLAIMS AND OTHER INTERESTED PARTIES ARE URGED TO READ THE PLAN (INCLUDING THE EXHIBITS THERETO) IN ITS ENTIRETY SO THAT

THEY MAY MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN.)

The Plan is enclosed to Holders of Claims with this Disclosure Statement. Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Plan.

A.      General.

In accordance with the Bankruptcy Code, the Plan classifies Claims separately and provides, separately for each class, either that the Claims in such class are unimpaired or that Holders of such Claims are impaired and will receive consideration on account of such Claims reflecting the relative rights and priorities of the Holders of such Claims. The treatment of Allowed Claims under the Plan will be in full settlement, satisfaction, and discharge of all such Claims except as otherwise specifically provided in the Plan or in the Confirmation Order.  On the Effective Date, the Debtor will be discharged from all Claims that have arisen before confirmation of the Plan.  Property of the Estate will remain liable for payments, distributions, and obligations provided for in the Plan or in the Confirmation Order.

Exhibit D to this Disclosure Statement contains a summary of the Claims classified and treated under the Plan.

MTS continues to attempt to obtain additional financing and is actively looking for new bus sale opportunities.  However, to date, these efforts have not resulted in an opportunity that would support the restarting of bus production at the plant. MTS will continue investigating these opportunities with the goal that the plant will be restarted.

Upon reaching the point where production would be restarting, MTS would expect to obtain proposals from former suppliers to provide parts to be used in the manufacturing of buses.  Although MTS cannot guarantee any future orders, it would be MTS' current expectation that MTS would make reasonable efforts to resume buying from the significant majority of MTS' pre-petition suppliers, assuming these suppliers can provide a competitive product for the manufacturing process.  MTS will attempt to keep suppliers informed of future developments with the plant and encourage suppliers to contact plant staff if they have future questions regarding the restarting of production.

B.      Unclassified Claims.

The Plan fixes deadlines for filing Administrative Claim accruing prior to the Confirmation Date, except the deadlines do not apply to (i) post-petition trade obligations and routine post-petition payroll obligations incurred in the ordinary course of the Debtor's post-petition business, (ii) obligations under section 1930 of title 28 of the United States Code, (iii) Fee Requests, and (iv) Administrative Claims arising from post-petition financing of the Debtor approved by the Bankruptcy Court.  Unless otherwise agreed between the Debtor and Holder of the Allowed Administrative Claim, all Allowed Administrative Claims will be paid in full on the later of (i) the Effective Date, or (ii)

within thirty days after the Administrative Claim becomes and Allowed Claim or the Fee Request is Allowed. Unpaid administrative expenses representing obligations incurred in the ordinary course of post-petition business by Debtor in Possession (including without limitation post-petition trade obligations, routine post-petition payroll obligations, and post-petition tax obligations) will be paid or performed by the Debtor in Possession in the ordinary course of business. Each Holder of an Allowed Priority Tax Claim arising before the Petition Date, if any, shall be paid in equal monthly installments of principal and interest over a period of five years from the Petition Date. Each Allowed Priority Tax Claim shall bear interest accruing from the later of Petition Date or the date the tax became due, through the date the Priority Tax Claim is paid, at the interest rate in effect on the Effective Date for payment of income taxes owing to the Internal Revenue Service.

C.      <u>Classification and Treatment of Claims</u>.

        1.      <u>Classification</u>.   For purposes of voting and all other Plan confirmation matters, except as otherwise provided herein all Claims shall be classified as set forth in this Article IX. Under this Plan, Claims and Interests are classified as follows:

        a.      <u>Class 1 (Secured Claim of Pioneer Bank)</u>.  Class 1 consists of the Secured Claim of Pioneer Bank.

        b.      <u>Class 2 (Pre-Petition Secured Claim of James A. Ludvik)</u>.  Class 2 consists of the Pre-Petition Secured Claim of James A. Ludvik.

        c.      <u>Class 3 (Other Secured Claims)</u>.  Class 3 consists of all Secured Claims not otherwise classified.  There are no known creditors in this class.

        d.      <u>Class 4 (Post-Petition Secured Claim of James A. Ludvik)</u>.  Class 4 consists of the Post-Petition Secured Claim of James A. Ludvik.

        e.      <u>Class 5 (Priority Claims)</u>.  Class 5 consists of all Priority Claims.  There are no known creditors in this class.

        f.      <u>Class 6 (General Unsecured Non-Priority Claims)</u>.  Class 6 consists of all Unsecured Non-Priority Claims, including but not limited to claims arising from rejection of executory contracts and unexpired leases and unsecured deficiency claims.

        g.      <u>Class 7 (Post-Petition Liabilities)</u>.  Class 7 consists of all claimants that have claims based upon liabilities created after the Petition Date.

        h.      <u>Class 8 (Equity)</u>.  Class 8 consists of the equity holders of the Debtor.  This class consists of the unit holders (interest holders of Debtor).  The current equity holders of Debtor are Millennium Transit, LLC, Blackwater Odyssey, LLC and David West.

2.    Treatment.  Each classified Claim shall be treated as set forth below.  All classes are impaired under the Plan.

a.    Class 1 (Secured Claim of Pioneer Bank).  The Class 1 Claim shall be paid in accordance with the pre-petition loan documents, modified as set forth herein.  The first payment shall be made five days after entry of the order confirming the Plan, and subsequent payments shall be made monthly.  The Holder of the Class 1 Claim shall retain its liens on the same property against which it had or are determined to have had a lien Pre-Petition.  Except as otherwise provided in this Plan or other order of the Court, the terms and provisions set forth in the Pre-Petition Agreements between the Debtor and the Holder of the Class 1 Claim will remain in effect after the Effective Date.  The missed post-petition principal amount of approximately $1.2 million to be paid upon loan maturity in 2014.

Class 1 (Secured Claim of Pioneer Bank).  The Class 1 Claim shall be paid in accordance with the pre-petition loan documents, without modification.  The first payment shall be made on the Initial Payment Date, and subsequent payments shall be made monthly.  The Holder of the Class 1 Claim shall retain its liens on the same property against which it had or are determined to have had a lien Pre-Petition.  Except as otherwise provided in this Plan or other order of the Court, the terms and provisions set forth in the Pre-Petition Agreements between the Debtor and the Holder of the Class 1 Claim will remain in effect after the Effective Date.

b.    Class 2 (Pre-Petition Secured Claim of James A. Ludvik).  The Class 2 Claim shall be paid as funds permit after payment of other creditor claims.  This class is impaired.  The Holder of the Class 2 Claim shall retain its liens on the same property against which it had or are determined to have had a lien Pre-Petition.  Except as otherwise provided in this Plan or other order of the Court, the terms and provisions set forth in the Pre-Petition Agreements between the Debtor and the Holder of the Class 2 Claim will remain in effect after the Effective Date.

c.    Class 3 (Other Secured Claims).  Allowed Class 3 Claims shall be paid in the full amount of the Allowed Secured Claim in equal payments of principal and interest made over 5 years from the Effective Date, with interest.  The first payment shall be made on the Initial Payment Date, and subsequent payments shall be made monthly.  Holders of Allowed Class 3 Claims shall retain their liens on the same property against which they had or are determined to have had a lien Pre-Petition.  Except as otherwise provided in this Plan or other order of the Court, the terms and provisions set forth in the Pre-Petition Agreements between the Debtor and the Holder of the Allowed Class 3 Claim will remain in effect after the Effective Date.  There are no known creditors in this class.

d. Class 4 (Post-Petition Secured Claim of James A. Ludvik). The Class 4 Claim shall be paid as funds permit after payment of other creditor claims. This class is impaired. The Holder of the Class 4 Claim shall retain its liens on the same property against which it had been granted in this proceeding.

e. Class 5 (Priority Claims). Class 5 consists of all Priority Claims. There are no known creditors in this class. Allowed Priority Claims shall be satisfied as follows: The Debtor shall make equal installments of principal and interest, to the Holders of all Allowed Class 5 Claims such that Class 5 Claims are paid in full within five years after the Effective Date, with Interest. The first payment shall be made on the Initial Payment Date, and subsequent payments shall be made monthly. If any default should occur with respect to a Class 5 Allowed Claim, the Holder of the Claim shall have the remedies specified in paragraph 6.20 of the Plan.

f. Class 6 (General Unsecured Non-Priority Claims). Class 6 consists of all allowed Unsecured Non-Priority Claims, other than Class 7 and Class 8 claims, including but not limited to claims arising from rejection of executory contracts and unexpired leases and unsecured deficiency claims. The Allowed Class 6 claimants shall be paid by Debtor from an unsecured creditors' fund in the amount of $150,000 which shall be set up by Debtor at confirmation of this plan. Debtor shall disburse the funds in the account within 10 days after all unsecured claims have been finally allowed or disallowed. The Allowed Class 6 claims shall be paid on a pro-rata basis. This class is impaired.

A total of 66 general unsecured claims were filed before the October 7, 2010 bar date (apart from Jim Ludvik's $13,000,000 general unsecured claim, which he has agreed to subordinate). The total amount claimed by the 66 general unsecured creditors is approximately $6,479,000. Based on this figure, the proposed dividend to unsecured creditors is about 2.3%.

g. Class 7 (Post-Petition Liabilities). The Class 7 claims, including any administrative claims not approved by the Court, shall not be paid under the Plan. These claims made be paid from future Post-Confirmation earnings of the Debtor. There is no guaranty of payment of any amount to the Holder of the Class 7 Claim. This class is impaired.

h. Class 8 (Equity). The equity owner (Jim Ludvik)s will retain ownership of their his stock in the Debtor.

## X ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN OF REORGANIZATION

A. <u>Liquidation under Chapter 7</u>. If no plan can be confirmed by the Debtor in the Chapter 11 Case, the Debtor's Chapter 11 Case likely would be converted to a case

under chapter 7 of the Bankruptcy Code. In a chapter 7 case, a trustee would be elected or appointed to liquidate the Property of the Estate for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.

To determine the value that the Holders of impaired Claims would receive if the estate assets were liquidated, the Bankruptcy Court would determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case. Section 704 of the Bankruptcy Code requires a chapter 7 trustee to collect and reduce to money the Property of the Estate as expeditiously as is compatible with the best interests of parties in interest.

In a chapter 7 case, as under the Plan, the cash amount that would be available for satisfaction of Allowed Administrative Claims and Allowed Claims would consist of the proceeds resulting from the disposition of Property of the Estate. Any such cash amount then would be reduced by the amount of any Claims validly secured by such assets, and the costs and expenses of the liquidation (including broker and dealer commissions, and attorneys and accountants fees).

The costs of liquidation under chapter 7 would include the fees payable to a trustee in bankruptcy. A chapter 7 trustee would be entitled to a reasonable fee, not to exceed 25% on the first $5,000 paid to creditors, 10% of amounts in excess of $5,000 but not in excess of $50,000, 5% of amounts in excess of $50,000 but not in excess of $1 million, and $3% of amounts in excess of $1 million. For example, chapter 7 trustee fees based on disbursement of $10 million would be an amount not to exceed $323,250, in addition to fees incurred by the chapter 7 trustee for appraisers, brokers, auctioneers, insurance premiums, and other costs associated with holding, preparing and selling property, fees incurred to legal counsel, and fees incurred to an accountant for the chapter 7 estate.

The Debtor's liquidation analysis is attached as <u>Exhibit C</u> to this Disclosure Statement. The liquidation analysis is based upon a *hypothetical chapter 7 case*. The values for the assets are based in some instances on the Debtor's knowledge and experience, with input from the Debtor's professional advisors. The liquidation analysis shows that a chapter 7 trustee would not be able to obtain any funds from any source to pay unsecured creditors. Thus, the Debtor estimates that the trustee would abandon the Debtor's only valuable assets, i.e., equipment and inventory, and that general unsecured creditors would not receive any payment in a chapter 7 liquidation. Furthermore, the Debtor estimates that the result of the abandonment would be that none of the secured creditors, except the Class 1 creditor, would receive any substantial payment on account of their respective secured claims, as the Debtor's equipment and inventory would be difficult to sell by auction or through other normal means of liquidating equipment and inventory.

The liquidation analysis considered the estimated liquidation value of the property of the estate and the estimated amount of the Claims that would be allowed, together with an estimate of certain costs and expenses that would likely result during the liquidation process. While the Debtor believes that the assumptions utilized in the liquidation analysis are reasonable, and conservative, the validity of such assumptions may be affected by the

-11-

occurrence of events and the existence of conditions not now contemplated or by other factors, many of which would be beyond the control of the Bankruptcy Court, the Debtor, and any other person.  The actual liquidation value of the property of the estate would likely vary from that presented in the liquidation analysis.

This liquidation analysis is qualified in its entirety by the fact that such a liquidation analysis involves known and unknown risks, uncertainties, and other factors that may cause the actual results to be materially different from any estimated results. Such factors include, but are not limited to, national, regional, and local general economic and market conditions, such as fluctuations in the prices of commodities, interest rates, and general economic activity levels.  The foregoing are merely examples of factors that could affect actual liquidation results, and should not be read to be an exhaustive list of such factors.

B.      Dismissal.  If the Plan is not confirmed, the chapter 11 case likely would be converted to a chapter 7 liquidation, or else would be dismissed.  Under either scenario, the Debtor believes that unsecured creditors would receive nothing for their claims, because secured creditors and lessor would take all of the Debtor's assets, with no payment being made to unsecured creditors.

IN SUM, THE DEBTOR BELIEVES THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED HEREIN, AND URGES CREDITORS TO VOTE FOR THE PLAN.

## XI      CONFIRMATION PROCEDURE

In order for the Plan to be confirmed by the Bankruptcy Court, all of the applicable requirements of section §1129 of the Bankruptcy Code must be met.  These include, among others, the requirements that the Plan: (i) is accepted by all impaired classes of Claims or, if rejected or deemed rejected by an impaired class, "does not discriminate unfairly" and is "fair and equitable" as to each rejecting class; (ii) is feasible; and (iii) is in the "best interest" of holders of Claims in each class impaired under the Plan.

A.      Voting; Acceptance.

Any holder of an Allowed Claim in any Class is entitled to vote on the Plan, unless such Claim has been disallowed for voting purposes by the Bankruptcy Court.  A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that an

acceptance or rejection was not solicited or procured or made in good faith or in accordance with the provisions of the Bankruptcy Code.

Each of the Voting Classes of Claims will be deemed to have accepted the Plan if the Plan is accepted by holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of such Class (excluding certain Claims designated under section §1126(e) of the Bankruptcy Code) that vote to accept or reject the Plan.

ANY HOLDER OF A CLAIM OF A VOTING CLASS THAT WISHES TO VOTE ON THE PLAN MAY DO SO BY FILLING IN, SIGNING, AND RETURNING AN APPROPRIATE BALLOT IN THE MANNER SPECIFIED ON THE BALLOT SO THAT IT IS RECEIVED NO LATER THAN THE VOTING DEADLINE SPECIFIED ON THE BALLOT.  SEE "VOTING PROCEDURES."

B.      Confirmation Hearing.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan (the "Confirmation Hearing").  The Confirmation Hearing may be postponed from time to time by the Bankruptcy Court without further notice except for an announcement of the postponement made at the Confirmation Hearing.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.  Objections must be made in writing, specifying in detail the name and address of the person or entity objecting, the grounds for the objection, and the nature and amount of the Claim held by the objector, and otherwise complying with the requirements of the Bankruptcy Rules and Local Bankruptcy Rules. Objections must be filed with the Clerk of the Bankruptcy Court and served upon the parties so designated in the Order and Notice in the manner set forth therein, on or before the time and date designated in the Order and Notice as being the last date for serving and filing objections to confirmation of the Plan.   UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THE ORDER AND NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

At the Confirmation Hearing, the Bankruptcy Court will determine, among other things, whether the following confirmation requirements specified in section 1129 of the Bankruptcy Code have been satisfied:

1.  The Plan complies with the applicable provisions of the Bankruptcy Code.

2.  The Debtor has complied with the applicable provisions of the Bankruptcy Code.

3.  The Plan has been proposed in good faith and not by any means proscribed by law.

4.      Any payment made or promised by the Debtor for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable or, if such payment is to be fixed after the confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

5.      The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtor, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the Debtor and the nature of any compensation for such insider.

6.      Each Holder of an impaired Claim either has accepted the Plan or will receive or retain under the Plan on account of such holder's Claims property of a value, as of the Effective Date, that is not less than the amount that such entity would receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code. See "Best Interests Test."

7.      Each class of Claims has either accepted the Plan or is not impaired under the Plan, or the Debtor has satisfied the requirements of Section 1129(b) of the Bankruptcy Code as to any non-consenting class.   Confirmation by invoking Section 1129(b) is discussed in the section below entitled Nonconsensual Confirmation

8.      Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and Other Priority Claims will be paid in full on the Effective Date and that holders of Priority Tax Claims will receive on account of such Claims either payment in full on the Effective Date or deferred cash payments, over a period not exceeding five years after the Petition Date, of a value as of the Effective Date equal to the allowed amount of such Claims.

9.      At least one class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such class.

10.      Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.  See "Feasibility."

The Debtor believes that, upon acceptance of the Plan by each of the Voting Classes, the Plan will satisfy all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the Plan is being proposed and submitted to the Bankruptcy Court in good faith.

C.      Best Interests Test.

As referred to above, confirmation of the Plan requires that each holder of an impaired Claim either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

The Debtor has determined that confirmation of the Plan will provide each holder of an impaired Claim with a recovery that is not less than that which it would receive pursuant to a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

D.      Feasibility.

The Bankruptcy Code requires that, in order for the plan of reorganization to be confirmed by the Bankruptcy Court, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation except as contemplated by the Plan or the need for further financial reorganization of the Debtor.  The Debtor believes its financial projections are achievable, and support a finding of feasibility.

E.      Absolute Priority Rule.

The Plan provides that the stockholders of the Debtor will retain their stock. Pursuant to 11 U.S.C. §1129(b)((2)(B)(ii), if the unsecured creditors vote against the Plan, then the Plan cannot be confirmed, because of the "absolute priority rule," which in general terms states that unsecured creditors must either be paid 100% of their claims or consent to any less favorable treatment proposed under the Plan, or else equity security holders may not retain any interest in the Debtor.

EF.      Nonconsensual Confirmation.

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, and if, as to each impaired class which has not accepted the plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting class.  The Debtor will seek confirmation even classes of creditors vote to reject the Plan.  Requirements that apply only with respect to a class of creditors that has voted to reject the Plan include:

1.      No Unfair Discrimination.

A plan of reorganization generally "does not discriminate unfairly" if (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the nonaccepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its Claims.

2.    Fair and Equitable Test.

The Bankruptcy Code establishes different "fair and equitable" tests for holders of secured Claims and holders of unsecured Claims, as follows:

(a)    Secured Claims.    Either (i) each holder of an impaired secured Claim either (x) retains the liens securing its secured Claim and receives on account of its Allowed Secured Claim deferred cash payments having a present value equal to the amount of its Allowed Secured Claim, or (y) realizes the "indubitable equivalent" of its Allowed Secured Claim, or (ii) the property securing the Claim is sold free and clear of liens, with such liens to attach to the proceeds, and the liens against such proceeds are treated in accordance with clause (i) of this subparagraph(a).

(b)    Unsecured Claims.    Either (i) each holder of an impaired unsecured Claim receives or retains under the Plan property of a value equal to the amount of its Allowed Claim, or (ii) the holders of Claims that are junior to the Claims of the nonaccepting class do not receive any property under the Plan on account of such Claims; except that the Debtor may retain property included in the bankruptcy estate under Bankruptcy Code §1115.  The language "except … the debtor may retain property included in the estate under section 1115 …" was added to the Bankruptcy Code by an amendment that became effective October 17, 2005.  It appears that this added language in the Bankruptcy Code permits the Court to confirm the Plan even if the class of unsecured creditors votes to reject the Plan.   As discussed in subparagraph E above, because the Plan provides that equity holders retain their stock, the Plan cannot be confirmed if the unsecured creditors vote against it.

## XII    POST-CONFIRMATION MODIFICATION OF THE PLAN

Under a 2005 amendment to the Bankruptcy Code that applies to this bankruptcy case, Bankruptcy Code §1127(e) was added to the Bankruptcy Code to permit modification of the Plan at any time after the Confirmation Date but before completion of payments under the Plan on the request of the Debtor, any chapter 11 trustee, the United States Trustee, or a holder of an allowed unsecured claim, to (i) increase or reduce the amount of payments on claims of a particular class provided for by the Plan; (ii) extend or reduce the time period for such payments; or (iii) alter the amount of the distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of such claim made other than under the Plan.

This new provision in the Bankruptcy Code by its terms appears to permit modification of secured payment to Holders of secured as well as unsecured claims, although fully secured creditors do not have standing to invoke the provision.  It appears to the Debtor that the Bankruptcy Court appears to have the authority to increase or decrease required payments to creditors based on the cash flow of the business or for other reasons, although the circumstances under which such a plan modification would be permitted is subject to being litigated.

# XIII    RISK FACTORS

The greatest risks to creditors under the Plan include the normal risks of operating a small business.  Those risks include, among other things, (i) the Debtor's inability to increase revenue, and reduce expenses, enough to fund the payment of liabilities and expenses; (ii) a decline in demand for the services provided by the Debtor; (iii) general economic climate; and (iv) competition.  There are other risks inherent in the Debtor's business, and this is not intended to be an exhaustive listing of risk.

# XIII    TAX CONSEQUENCES

A.    <u>Tax Consequences Generally</u>.  The discussion of tax consequences set forth below is necessarily general in nature and does not necessarily describe all of the tax consequences to the Debtor or the Creditors arising under the Plan.  The Debtor has not obtained rulings from the Internal Revenue Service with respect to any of these matters, and the anticipated federal income tax consequences are not binding on the Internal Revenue Service.  This discussion is not intended as a substitute for professional tax advice, including the evaluation of recently enacted and pending legislation.  The brevity of the discussion required omission of matters that might affect one or more creditors, depending upon individual circumstances.  Creditors are urged to consult their own tax advisors as to the consequences to them, under federal and applicable state and local laws, of the consummation of the Plan.

B.    <u>Tax Consequences to the Creditors</u>.  THE DEBTOR AND ITS COUNSEL AND ACCOUNTANTS EXPRESS NO OPINION THAT ANY CREDITOR MAY RELY UPON AS TO THE TAX CONSEQUENCES TO ANY CLAIMANT UNDER THE PLAN.  EACH CREDITOR IS URGED TO CONSULT AN APPROPRIATE TAX ADVISOR.  In very general terms, which may not apply to any individual creditor, to the extent that a Holder of a Claim receives or expects to receive less from the Debtor under the Plan than the Holder's tax basis in the Claim to which such amount relates, such Holder may be entitled to claim a bad debt deduction.  The amount and availability of such deduction will depend, among other things, upon the Holder's tax accounting method for bad debts.  It should be noted that if the debt is not business related the deduction might be available only if the debt is worthless.  To the extent that a Holder receives payment pursuant to the Plan in an amount in excess of the Holder's adjusted tax basis of the Claim to which payment relates, such excess may be income to the Holder.

C.    <u>Tax Consequences to the Estate.</u>  A reduction of tax attributes will be required if and to the extent cancellation of indebtedness income is excluded from gross income pursuant to IRC section 108(a).  Tax attributes are reduced in the following order of priority:  Net operating losses and net operating loss carryovers; general business credits; minimum tax credits; capital loss carryovers; basis of property of the taxpayer; passive activity loss or credit carryovers; and foreign tax credit carryovers.  Tax attributes are generally reduced by one dollar for each dollar excluded from gross income, except

Case 08-12848-s11    Doc 174    Filed 01/05/11    Entered 01/05/11 16:06:56 Page 20 of 21

that general tax credits, minimum tax credits, and foreign tax credits are reduced by a lesser percentage for each dollar excluded from gross income.

Dated: _____

MILLENNIUM TRANSIT SERVICES, LLC,
a New Mexico limited liability company

By:     Its Manager
  Millennium Transit, LLC,
  a Delaware limited liability company

  By:_____
    James A. Ludvik, Member and Manager

THUMA & WALKER,
a Professional Corporation

By: Filed electronically
    David T. Thuma
    500 Marquette, N.W., Suite 650
    Albuquerque, NM 87102
     (505) 766-9272
     (505) 766-9287 fax
    dthuma@thumawalker.com
Attorneys for the Debtor